Anthony T. Zappia and Madelina Zappia v. Commissioner.
Zappia v. Commissioner
Docket No. 89265.
United States Tax Court
T.C. Memo 1963-257; 1963 Tax Ct. Memo LEXIS 89; 22 T.C.M. (CCH) 1282; T.C.M. (RIA) 63257; September 19, 1963
C. Severin Buschmann, Jr., for the petitioners. Meno W. Piliaris, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined the following deficiencies in the income taxes of petitioners and additions to tax: Additions to Tax
Sec. 291(a),
Sec. 294
I.R.C. 1939
(d)(1)(A),
Year
Deficiency
Sec. 6651(a), I.R.C. 1954
I.R.C. 1939
1951
$12,737.06
$1,273.71
$1,185.23
1952
10,285.78
1,017.65
1953
3,207.88
288.47
1954
$ 1,645.24
$ 152.03
1955
335.96
$ 83.99
1956
52.15
*90 The two principal issues [1] for decision are: 1. Whether the petitioners received taxable income of $25,217.39 in the year 1951 for amounts expended by the S & Z Manufacturing Company, Inc., to purchase 325 shares of its own stock which were acquired by petitioner, Anthony T. Zappia, through an intermediary title holder. 2. Whether the petitioners received taxable income of $4,000 in 1951, $11,000 in 1952, and $4,000 in 1953 by reason of amounts received from S & Z Manufacturing Company, Inc., designated as payments by the corporation under an option to purchase from Petitioner, Anthony T. Zappia, all the common stock of Avon Engineering Company, Inc. *91 Findings of Fact Anthony T. and Madelina Zappia (hereinafter called petitioners) are husband and wife who reside in Indianapolis, Indiana. They filed their joint Federal income tax return for the years 1951 through 1956 with the district director of internal revenue at Indianapolis. Petitioners filed amended joint income tax returns on February 20, 1956, for the years 1952, 1953, and 1954 with the district director of internal revenue at Indianapolis, Indiana. Anthony T. Zappia (sometimes referred to either as petitioner or Zappia) is a high school graduate. After his graduation, he worked in a glass factory for 17 years learning the machinist trade and how to overhaul and care for glass making machinery. He holds 18 patents individually and a number of others in conjunction with other individuals, all involving glass making machinery. On May 29, 1945, the petitioners and Otto H. Samuelson and his wife incorporated the S & Z Manufacturing Company, Inc., for the purpose of engaining in the business of the manufacture and distribution of glass making machinery and apparatus. As of the fiscal year ended September 30, 1950, the balance sheet of the S & Z Manufacturing Company, *92 Inc., (hereinafter sometimes called S & Z) was as follows: ASSETS
Cash
$ 1,447.87
Receivables
17,682.81
Inventories
14,205.95
Capital Assets
$110,550.12
Less Reserve
38,144.34
72,405.78
Land
1,434.40
Other Assets (organization, expense
deposits, etc.)
4,373.32
Total Assets
$111,550.13
LIABILITIES
Accounts Payable
$ 10,519.27
Notes and Mortgages Payable
27,472.08
Accrued Wages and Taxes
6,842.09
Other Liabilities
883.88
1250 Shares Common Stock
105,040.00
Deficit in Earnings
(39,207.19)
Total Liabilities
$111,550.13
The stockholders of S & Z during the fiscal year ended September 30, 1950, were: A. T. Zappia and Relatives
97 Shares
Kermit B. Parrish
150 Shares
Joseph E. Hamaker
150 Shares
Douglas F. Stewart
350 Shares
Numerous Others
503 Shares
1,250 Shares
The petitioner was a director of S & Z during its entire existence. He was president of the company most of the time, the only exception being between November 3, 1950, and August 2, 1951, when Douglas F. Stewart served in that capacity. Schedule E of the corporate income tax return of S & Z for the fiscal year ended *93 September 30, 1951, provides: Schedule E. - COMPENSATION OF OFFICERS
Percentage of
3. Time
Corporation's
1. Name and Address
2. Official
Devoted to
Stock Owned
6. Amount of
of Officer
Title
Business
4. Com. 5. Pfd
Compensation
Douglas F. Stewart
President
Part
$ 5,200.00
Anthony T. Zappia
Vice Pres.
100%
4%
12,059.33
K. B. Parrish
Secretary
Part
1,200.00
J. E. Hamaker
Treasurer
Part
1,200.00
Charles L. Zappia
Asst. Secy.
100%
4 1/2%
3,157.89
Treas.
Total compensation
(Enter here and as
$22,817.22
of officers.
item 16, page 1)
On or about July 2, 1951, Douglas F. Stewart, Kermit B. Parrish, and Joseph E. Hamaker announced that they had a buyer for their controlling interest in S & Z Manufacturing Company, Inc., who was a dealer in used machinery. The petitioner was given 24 hours to come up with $4,000 with which to purchase a 30-day option to buy 650 shares of stock of S & Z from Stewart, Parrish, and Hamaker at a total price of $50,400. He did not have the money. Since the petitioner had been promised all the work from contractors that S & Z could handle during the Korean War effort, he *94 made this known to J. A. McDaniel, who he had known for many years, and asked McDaniel for $5,000 with which to acquire the option to buy the stock. McDaniel gave him $5,000 and in connection therewith both the petitioner and McDaniel signed the following receipt: July 2, 1951 Received of J. A. McDaniel $5,000 for the purpose of taking a 30 day option on 650 shares Common Stock (1500 shares authorized, 1250 shares issued) of S & Z Mfg. Co., Inc. The purchase price of the 650 shares is $50,000.00. The balance of $45,000.00 will be obtained by other means to be determined by myself within 30 days. For the $5,000.00 consideration J. A. McDaniel will receive 325 shares of Common Stock in S & Z Mfg. Co., Inc., and become an officer and director of S & Z Mfg. Co., Inc. At that time McDaniel was president and sole stockholder of J. A. McDaniel & Company, Inc., contractors and builders. John B. Craig, who wrote out the receipt and witnessed it, was a certified public accountant and vice president of J. A. McDaniel & Company, Inc.
The $5,000 acquired by petitioner from McDaniel was used as follows: $1,000 to pay an obligation he owed to Parrish and Hamaker, and the remaining $4,000 *95 was used by Zappia personally to acquire the option on July 2, 1951. The option purchased required the balance of $46,400 to be paid on or before August 2, 1951, at which time the 650 shares of the common stock of S & Z would be transferred. The option was executed by petitioner individually as purchaser. The intention of petitioner at the date of the acquisition of the option was to solicit his Italian friends and stockholders for loans so that he could exercise the option and buy the stock. However, he was unable to borrow the balance of the purchase price. A meeting was then held between McDaniels, Craig, and Zappia. As a result thereof it was determined to transfer the option to S & Z. At a special meeting of the Board of Directors of S & Z, held on August 1, 1951, and adjourned to August 2, 1951, Parrish, Hamaker, and Stewart submitted their resignations and Marshall W. Thompson joined the petitioner and his brother, Charles L. Zappia, as the remaining directors of the corporation. The corporation minutes recorded the adoption of the following transactions and agreements: 1. Petitioner assigned his option to purchase 650 shares of S & Z to J. A. McDaniel & Company, Inc. *96 , to the extent of 52 shares and to S & Z to the extent of 598 shares, which assignment was accepted by the corporations. 2. S & Z agreed to purchase the shares of its stock from Stewart, Parrish, and Hamaker for the balance ($46,400) of the purchase price. 3. S & Z authorized the submission of a proposal to have J. A. McDaniel & Company, Inc., build an addition to the existing buildings of S & Z for the sum of $15,000 and for the delivery of the 598 shares of its capital stock. 4. S & Z authorized and directed its officers to transfer the 598 shares of the common stock to J. A. McDaniels & Company, Inc., upon the acceptance by that corporation of the proposition made by S & Z to construct the addition to the existing buildings. 5. S & Z officers were authorized and directed to execute and deliver chattel mortgage installment notes in the principal amounts of $49,674.94 and $10,805.06 pursuant to the terms of a chattel mortgage, securing the notes and covering all the machinery, equipment, and other chattels located in S & Z's plant. 6. The minutes set forth that it was not advisable "tax wise" to attempt to secure additional capital to purchase machinery to take care of *97 the purported backlog of work, but that petitioner, as president and owner of the stock of Avon Engineering Company, Inc., (hereinafter sometimes referred to as Avon) would consider having that corporation lease its equipment to S & Z for 2 years and would secure the transaction by giving S & Z an option to purchase the outstanding 1,000 shares of Avon for $85,000. Thereupon, the directors of S & Z unanimously directed the petitioner to enter into a 2 year lease of the equipment of Avon for $3,500 per month, plus personal property taxes and such other terms as were deemed advantageous. The machinery and equipment of S & Z were mortgaged on August 1, 1951, to Indianapolis Machinery & Supply Company, Inc., to secure the payment of a loan of $60,480 which was made to S & Z. On August 2, 1951, S & Z acquired 598 shares of its own stock from Stewart, Parrish, and Hamaker. On the same day S & Z issued 598 shares of stock to J. A. McDaniel & Company, Inc. It was agreed between J. A. McDaniel and Zappia that of the 650 shares of S & Z stock transferred to J. A. McDaniel & Company, Inc., 325 shares would revert to Zappia as soon as possible and that the total 650 shares would always be voted *98 as a block. No consideration was to be paid by Zappia for the 325 shares of stock and, in fact, nothing was paid by him. The 325 shares of stock of S & Z were transferred from J. A. McDaniel & Company, Inc., to John B. Craig on April 1, 1952, to hold for Anthony T. Zappia. An endorsement of Stock Certificate No. 104 signed by John B. Craig indicates that these 325 shares of stock were transferred to Zappia on April 1, 1952. The Board of Directors of S & Z at a meeting held on December 11, 1952, adopted the following resolution: RESOLVED that dividends of two dollars and fifty cents ($2.50) per share of capital stock of this corporation be declared out of the undivided proceeds, and that the Treasurer is hereby directed to give checks for the payment on the 23rd day of December 1952 to stockholders of record. The building was completed by J. A. McDaniel & Company, Inc., during the fiscal year ended September 30, 1952. It was an extension of the existing plant. S & Z received large orders from other corporations in connection with the Korean War effort from late 1951 until early 1953. When the Korean War ended, the contracts were largely cancelled. The gross sales, gross income, *99 deductions, and net income of S & Z for the fiscal years ended September 30, 1951, 1952, and 1953 were as follows: 1951
1952
1953
Gross Sales
$289,994.44
$1,093,752.23
$490,271.50
Gross Income:
98,273.27
272,100.83
(38,665.91)
Deductions:
50,646.13
177,961.63
72,644.93
Net Income:
47,627.14
94,139.20
(111,310.84)
Gain (on sale of
fixed assets), less: other expenses
$ 25,464.14
Net loss
($ 85,846.70)
On March 14, 1951, the petitioner, Jerold Gossmann, and Frank L. Fleeser incorporated Avon Engineering Co., Inc., for the purpose of conducting a general engineering business and more specifically to design and prepare specifications for tools and fixtures. Fleeser was to acquire the business and Gossmann was to do the work. Subsequently, both of them withdrew from the corporation and the petitioner acquired all of the outstanding stock. S & Z needed additional equipment to perform its contracts and for its new plant. Petitioner was able to acquire such equipment, which was placed in the name of Avon Engineering Co., Inc. On May 31, 1952, the total cost of all machinery and equipment in Avon was $69,400. The purchase price *100 for the equipment placed in the name of Avon was secured by a mortgage loan from the Indianapolis Machinery & Supply Company, Inc. The equipment was then leased by Avon to S & Z for $3,500 per month. In connection therewith the petitioner gave S & Z the following option to purchase all the stock of Avon: OPTION TO PURCHASE SHARES OF STOCK THIS 15th DAY OF SEPTEMBER 1951 KNOW ALL MEN BY THESE PRESENTS That Anthony T. Zappia, for and in consideration of $1,000.00 per month, payable the first of each month until the option is exercised, paid by S & Z Manufacturing Company to Anthony T. Zappia, agrees as follows: 1. Anthony T. Zappia hereby gives and grants to S & Z Manufacturing Company, its successors and assigns, the exclusive right or privilege of purchasing all the stock of Avon Engineering Company, being 1,000 shares common no par stock, between June 15, 1952 and September 15, 1952. 2. The purchase price for said stock is Eighty-five Thousand Dollars ($85,000.00), and upon exercise of option to purchase, shall be due and payable by S & Z Manufacturing Company to Anthony T. Zappia at Indianapolis, Indiana. Whatever sums of money have been paid on the option shall be applied *101 to the purchase price to reduce it to that extent if the option is exercised. 3. Written notice of exercise of option to purchase hereunder by S & Z Manufacturing Company or its successors or assigns shall be given to Anthony T. Zappia at Indianapolis, Indiana, on or before September 1, 1952. 4. In event of the exercise of such option, and payment of the purchase price, possession of said stock of Avon Engineering Company shall be delivered to S & Z Manufacturing Company properly executed and with documentary stamps affixed. At the annual meeting held on November 9, 1951, the stockholders of S & Z elected the following directors: Anthony T. Zappia, James A. McDaniel Charles L. Zappia, John B. Craig, and James D. Lee. At a meeting of the Board of Directors immediately following the annual meeting the directors adopted the following resolution: RESOLVED that the S. & Z. Manufacturing Company, Inc., would lease the machinery listed in the contract with the Avon Engineering Company for $3,500.00 per month. FURTHER RESOLVED that the option for the controlling interest of Avon Engineering Company be purchased from Anthony T. Zappia as per contract executed. On December 21, 1951, James *102 Lee, Anthony Zappia, James McDaniel, and Charles Zappia incorporated Avion Engineering Company, Inc. Prior to its incorporation, the petitioner owned a small machine shop which was operating on the east side of Indianapolis under the name of Avion Company which had two or three employees who were making tank parts under a subcontract. Also prior to its incorporation, a contract was entered into by petitioner to buy out a machine shop operator who owned equipment and a building. This contract was assigned to Avion Engineering Company, Inc., where the transaction was consummated. In the process of incorporating Avion Engineering Company, Inc., the existing equipment of the unincorporated Avion Company business was transferred by petitioner to the corporation in exchange for stock and $8,500. The cash was intended to reimburse the petitioner for the existing machinery. The corporate income tax returns of Avon Engineering Company, Inc., disclose the following balance sheets for the fiscal years ending May 31, 1951, May 31, 1952, May 31, 1953, and May 31, 1954: AVON ENGINEERING CO., INC.
@BALANCE SHEETS
As At
May 31,
May 31,
May 31,
May 31,
1951
1952
1953
1951
Assets
Cash
$ 2,113.60
$ 567.36
$ 93.21
Notes & Accounts Receivable
3,596.00
33,096.00
18,096.50
Machinery
69,400.00
Reserve for Depreciation
(5,552.00)
Small Tools
148.36
148.36
Organization Expense
165.00
165.00
165.00
Total Assets
None
$69,870.96
$33,976.72
$18,354.71
Liabilities & Capital
Accounts Payable
$ 4,000.00
Bonds, Notes & Mortgages
Payable
$44,000.00
10,000.00
Accrued Wages
3,053.50
1,053.50
Accrued Taxes
6,395.24
750.30
$ 54.54
Common Stock
1,500.00
1,500.00
1,500.00
Earned Surplus
14,922.22
16,672.92
16,800.17
Total Liabilities & Capital
None
$69,870.96
$33,976.72
$18,354.71
*103 In connection with the option agreement for the purchase of Avon stock, S & Z wrote checks payable to petitioner in the amounts of $4,000 in 1951, $11,000 in 1952, and $1,000 in 1953. These payments, totaling $19,000, were received by petitioner. The stock of Avon Engineering Company, Inc., was transferred to Zappaigiel Realty Corporation on February 4, 1953. Deposits were made in an account under the name of Anthony T. Zappia and John B. Craig at the Indiana National Bank of Indianapolis. The dates of these deposits, the amounts thereof, and notations designating the source of the funds deposited, as taken from the deposit book and check stubs, are as follows: Deposit Date
Amount
Explanation
May 1, 1952
$ 1,000.00
S & Z
June 12, 1952
1,000.00
S & Z
June 17, 1952
2,500.00
Avion
June 27, 1952
$1,000.00
S & Z
June 27, 1952
1,000.00
Avion
June 27, 1952
1,000.00
3,000.00
Avon
Aug. 21, 1952
500.00
1/2 S & Z
Aug. 25, 1952
440.00
Sale Stock
Sept. 2, 1952
5,000.00
Avion
Sept. 3, 1952
900.00
S & Z
Sept. 3, 1952
1,758.40
2,658.40
Avion Pay - Tax Deducted
Oct. 10, 1952
1,000.00
S & Z
Nov. 13, 1952
1,000.00
S & Z
Nov. 28, 1952
1,788.40
Avion Pay
Dec. 4, 1952
1,000.00
S & Z
Dec. 24, 1952
500.00
S & Z Dividend
Jan. 12, 1953
2,000.00
S & Z
Feb. 6, 1953
2,000.00
S & Z
Feb. 6, 1953
765.23
2,765.23
Retn Travel Exp.
March 19, 1953
1,000.00
Avon
May 22, 1953
300.00
Not Identified
Aug. 21, 1953
100.00
Pay
$27,552.03
*104 The petitioner managed the plant and procured the business for S & Z. His brother, Charles, was responsible for maintenance, purchasing, and general operations of the plant. At the Board of Directors meeting held on November 9, 1951, the following officers were elected: Anthony T. Zappia, president; James A. McDaniel, vice president; John B. Craig, treasurer; and Charles L. Zappia, secretary and assistant treasurer. At that time J. A. Mcdaniel had no specific duties. John B. Craig, however, was placed in charge of the books and records of S & Z. A resolution attached to the August 2, 1951, minutes of the Board of Directors of S & Z authorized the signing of checks by any two of the following officers of the corporation: president, vice president, secretary, and treasurer. On August 2, 1951, the following individuals were the only officers of S & Z: Anthony T. Zappia, president; Marshall W. Thompson, vice president; and Charles L. Zappia, secretary. At a meeting held on May 13, 1953, the Board of Directors of S & Z adopted, among other resolutions, the following: BE IT FURTHER RESOLVED: That said Bankers Trust Company of Indianapolis, Indiana, be, and it is hereby, authorized *105 to pay out funds on deposit with it from time to time to the credit of this corporation upon checks, drafts, and orders drawn upon said depositary and signed in the name of this corporation by its President, Anthony T. Zappia, and Vice-President, James A. McDaniel, jointly or Charles L. Zappia, Secretary and John B. Craig, Treasurer, jointly. BE IT FURTHER RESOLVED: That the President, Anthony T. Zappia, and the Secretary, Charles L. Zappia, are hereby authorized to borrow from the said Bankers Trust Company, of Indianapolis, Indiana, the sum of Forty-five Thousand Dollars ($45,000.00) payable over a period of ten (10) years at the interest of five and one-half per cent (5 1/2%) and that said officers are hereby authorized and directed to execute and deliver in the name and on behalf of this corporation promissory notes evidencing said indebtedness and to mortgage as security for the payment of said mortgage the following described real estate, to-wit: The minutes of the February 3, 1952, meeting of the Board of Directors of S & Z show that the corporation leased a one and one-half ton Ford truck from J. A. McDaniel & Company, Inc. Other improvements for the plant were constructed. *106 Insurance was purchased on the lives of the officers and stockholders. All officers received a salary. On February 2, 1953, Zappaigiel Realty Corporation (hereinafter sometimes referred to as Zappaigiel) was incorporated by John B. Craig, Charles L. Zappia, and James A. McDaniel, the purpose being "to purchase, acquire, hold, improve, sell, convey, assign, release, mortgage, encumber, lease, hire, and deal in real and personal property of every name and nature, including stocks and securities of other corporations, and to loan money and take securities for the payment of all sums due the corporation, and to sell, assign, and release such securities." The stated reason for the use of this corporation was to build housing and apartments with Government F. H. A. loans. To create an equity, Anthony Zappia, Charles Zappia, John Craig, and James McDaniel contributed their homes to the Zappaigiel Realty Corporation. The Board of Directors of Zappaigiel met at Indianapolis on February 3, 1963, and, in addition to other actions taken, unanimously adopted the following resolutions: WHEREAS, Anthony T. Zappia has offered to sell to the corporation one thousand shares (1,000) of Avon Engineering *107 Company, Inc., and plot 23 in Brendonwood, an Addition to the City of Indianapolis, in consideration that this corporation will issue to the order of said Anthony T. Zappia, seven hundred (700) shares of the common stock of this corporation full paid and non-accessible, and, WHEREAS, it appears to the Board of Directors that said property is necessary for the business of this corporation and that the same is of the fair value of at least equal to the Seventy Thousand Dollars ($70,000.00) value of the stock to be issued, therefore, and, resolved that the said offer of Anthony T. Zappia to sell to the corporation said property be, and it is hereby accepted, that the proper officers be, and they are hereby authorized and directed to execute, issue, and deliver in the name and on behalf of this corporation, and under the corporate seal, certificates for seven hundred (700) shares to the order of Anthony T. Zappia, and, BE IT FURTHER RESOLVED: That all the consideration received or to be received for such stock, the sum of Seventy Thousand Dollars ($70,000.00) is hereby specified as capital. WHEREAS, John B. Craig has offered to sell to the corporation Plot 24 in Brendonwood, an Addition *108 to the City of Indianapolis, in consideration that this corporation will issue to the order of said John B. Craig, one hundred (100) shares of the common stock of this corporation full paid and non-accessible, and, WHEREAS, it appears to the Board of Directors that said property is necessary for the business of this corporation and that the same is of the fair value of at least equal to the Ten Thousand Dollars ($10,000.00) value of the stock to be issued, therefore, and, RESOLVED: That the said offer of John B. Craig to sell to the corporation said property be, and it is hereby accepted, that the proper officers be, and they are hereby authorized and directed to execute, issue, and deliver in the name and on behalf of this corporation, and under the corporate seal, certificates of one hundred (100) shares to the order of John B. Craig, and, BE IT FURTHER RESOLVED: That all the consideration received or to be received for such stock, the sum of Ten Thousand Dollars ($10,000.00) is hereby specified as capital. * * *
WHEREAS, Charles Zappia has offered to sell to the corporation part of Lots Numbered 9 and 10 in Helena Suburban Home Addition to the City of Indianapolis, *109 the plat of which is recorded in Plat Book 14 Page 98 in the office of the Recorder of Marion County, Indiana, more particularly described as follows: Beginning at the southwest corner of said Lot 10, the same being in the center of Miller Drive, thence North in and along the center line of Miller Drive 166 feet, thence East parallel to the South lines of said Lots 9 and 10, 271 feet to a point, thence South parallel to the East line of Lot 9, 166 feet to a point in the South line of Lot 9, said point being 36 feet West of Southwest corner of said lot, thence West along the South lines of said Lots 9 and 10, 271 feet to the place of beginning; in consideration that this corporation will issue to the order of the said Charles Zappia one hundred (100) shares of the common stock of this corporation fully paid and non-accessible, and, WHEREAS, it appears to the Board of Directors that said property is necessary for the business of this corporation and that the same is of the fair value of at least Ten Thousand Dollars ($10,000.00), the value of the stock to be issued therefore, and, RESOLVED: That said offer of Charles L. Zappia to sell said property to the corporation be, and it is *110 hereby accepted, that the proper officers be, and they are hereby authorized and directed to execute, issue, and deliver in the name and on behalf of this corporation, under the corporate seal, certificates for one hundred (100) shares to the order of Charles L. Zappia, and, BE IT FURTHER RESOLVED: That all the consideration received for such stock, the sum of Ten Thousand Dollars ($10,000.00) is hereby specified as capital. The funds deposited in the bank account in the names of Anthony T. Zappia and John B. Craig were expended for two lots in Brendonwood (Indianapolis) and for the construction of a home on each lot, one for John Craig and one for the petitioner. The homes were identical in structure except that the home of petitioner contained 2,400 square feet and was subject to a mortgage of $20,000 while the home of John Craig contained 1,800 square feet and was subject to a mortgage of $16,000. The contractor was J. A. McDaniel & Company, Inc.
All four homes were transferred on or about February 5, 1953, to Zappaigiel Realty Corporation and that corporation assumed the mortgages, paid the taxes, insurance, maintenance, and upkeep and contributed to the cost of the homes. *111 The petitioner was elected president of Zappaigiel Realty Corporation on February 3, 1953, and served in that capacity until September 15, 1956, when he signed its corporate return, for the fiscal year ended March 31, 1956. The Zappaigiel corporate income tax return for the fiscal year ending March 31, 1956, discloses adjustments to surplus which confirm that the residences of Anthony T. Zappia, Charles L. Zappia, and John B. Craig were placed on the books of the corporation and that the corporation had made mortgage payments on these homes. The return also discloses that improvements were made on these residences, that water softener units were purchased for these residences, and that power mowers were purchased. Three stock certificates of Zappaigiel were prepared and dated January 27, 1953. These certificates were signed by the petitioner as president and Charles L. Zappia as secretary. The certificate number, the number of shares, and the individual to whom the certificate was issued are as follows: Certificate
No.
Shares
Issued To
1
700
Anthony T. Zappia
2
100
John B. Craig
3
100
Charles L. Zappia The stubs of the stock certificates do not indicate *112 that the certificates were ever delivered. The stubs of Certificate No. 1 contain a typewritten attachment which states that the certificate was delivered by Anthony T. Zappia to the Fidelity Bank and Trust Company on December 3, 1956, as collateral on a loan. The corporate returns of Zappaigiel Realty Corporation for the fiscal years ended March 31, 1954, and March 31, 1955, show that there were 900 shares of corporate stock issued and outstanding and that the stock was held by three shareholders. On February 25, 1953, machinery, tools, and equipment of Avon Engineering Company, Inc., formerly leased to S & Z, were sold to the Indianapolis Machinery and Supply Company for a stated consideration of $54,000. On the same date S & Z sold certain items of machinery, equipment, and tools to the Indianapolis Machinery & Supply Company for $56,927. The cost basis of this machinery is reflected on the corporate return of S & Z as $52,972. The balance of the machinery, equipment, and tools of S & Z was pledged to the Bankers Trust Company of Indianapolis to secure bank loans. Also, on February 25, 1953, the same machinery was leased by Indianapolis Machinery & Supply Company to the Zappaigiel *113 Realty Corporation for $122,400, payable over a 24-month period. And, on the same date, Zappaigiel Realty Corporation purchased for a stated consideration of $10 the option to purchase the same equipment from Indianapolis Machinery & Supply Company on February 28, 1955, the date the lease expired, for a stated consideration of $12,000. At a meeting held on February 26, 1953, the Board of Directors of S & Z resolved to lease certain equipment from Zappaigiel Realty Corporation. The minutes of this meeting do not identify the equipment and do not set forth the terms of the lease. This loan was paid off on December 11, 1953, by the transfer of 227 1/2 shares of the 325 shares of capital stock of S & Z retained by J. A. McDaniel & Company, Inc.
On February 23, 1954, S & Z executed a promissory note to J. A. McDaniel & Company, Inc., in the amount of $5,800. On February 27, 1954, Avion Engineering Company, Inc., and James A. McDaniel entered into a "cancellation agreement" which provided as follows: Comes now, James A. McDaniel, and comes also the Avion Engineering Co., Inc., and the parties having heretofore entered into an employment contract do mutually agree and to hereby *114 cancel said contract, the same having been previously entered into on the first day of December, 1953. It is further agreed between the parties that the Avion Engineering Co., Inc., is indebted to the said James A. McDaniel in the amount of Two Thousand One Hundred Dollars ($2,100.00) and that said indebtedness is herewith being paid in full and the said James A. McDaniel as further consideration for the cancelling of this agreement does hereby assign back to the Avion Engineering Co., Inc., all of his stock in said company together with whatever stockhold interest he now has in the Stan Lee Engineering Co.
At or about the same time John B. Craig transferred to the petitioner the 325 shares of S & Z stock held in his name. Craig resigned as an officer and director of S & Z on February 8, 1956. Petitioners, who depended upon John Craig to prepare their Federal income tax returns, reported the following amounts of gross income for Federal tax purposes: Year
Amount
1951
$17,459.84
1952
16,172.50
1953
9,050.00
1954
15,146.85
1955
11,438.37
1956
10,152.56
Petitioners reported on their original joint income tax return for the calendar year 1952 dividends *115 from S & Z in the amount of $872.50, representing dividends at the rate of $2.50 per share on 349 shares of stock. Petitioners reported on their amended joint income tax return for the calendar year 1952 dividends from S & Z in the amount of $952.50, representing dividends at the rate of $2.50 per share on 381 shares of stock. In his notice of deficiency mailed on June 20, 1960, the respondent gave the following explanations for adjustments with respect to the two principal issues: (a) It is determined for the taxable year ended December 31, 1951 that within the meaning of sections 22(a) and 115 of the Internal Revenue Code of 1939 you received a dividend in the amount of $25,217.39 from S. & Z. Manufacturing Co., Inc. by reason of such amount being expended by such corporation for the purchase of 325 shares of its stock, which stock was purchased primarily for your personal benefit and, after passing through an intermediary title holder, was transferred to you without consideration in money or money's worth. Accordingly, such amount is included in your gross income for such taxable year. (b) It is determined for taxable years ended December 31, 1951, December 31, 1952 and *116 December 31, 1953 that within the meaning of section 22(a) of the Internal Revenue Code of 1939 you received ordinary gross income in the amounts of $4,000.00, $11,000.00 and $4,000.00, respectively, by reason of amounts received by you from S. & Z. Manufacturing Co., Inc. designated as payments by such corporation under an option to purchase from you all the common stock of Avon Engineering Co., Inc. Accordingly, such amounts are included in your gross income for such respective taxable years. Opinion Each of the issues here involved poses a question of fact and the petitioners have the burden of proof. We conclude on the record presented that the petitioners have failed to prove error in respondent's determination with respect to any of the issues. They have failed to offer sufficient evidence to establish a prima facie case on the two principal issues and have introduced no evidence regarding the other issues. It is true that Anthony Zappia, the responsible officer in the various Zappia enterprises, incurred substantial tax liabilities in such capacity. But however unfortunate that might be, it does not serve as a meritorious defense for the deficiencies asserted. We cannot *117 find that the deficiency determination was arbitrary. We have made an effort to include in our Findings of Fact all pertinent facts which could be found from competent evidence in the record. As to the first issue, we are convinced the evidence establishes that the petitioner did receive taxable income of $25,217.39 when he caused S & Z to acquire 325 shares of its stock for his benefit. On July 2, 1951, the petitioner, in his efforts to acquire control of S & Z., agreed that J. S. McDaniel was to receive 325 shares of S & Z stock and also become an officer and director of the company. At that time petitioner was a director of the corporation, and he and his relatives controlled only 97 shares of the corporate stock. Petitioner had obtained an option to acquire the controlling interest in the corporation and either on his own or with the advice of others devised a plan through which corporate funds would be utilized to acquire these 650 shares of stock. This plan involved McDaniel because it was agreed that the stock would be transferred to J. A. McDaniel & Company, Inc., along with $15,000 cash consideration for the construction of an addition to the physical plant of S & Z. According *118 to McDaniel's testimony, it included an oral agreement whereby 325 shares of this stock were to revert to petitioner as soon as possible and that the 650 shares of stock would be voted as a block. The evidence shows that on April 1, 1952, the shares (325) of this stock were transferred to John B. Craig to hold for the petitioner. The stock certificate was endorsed to petitioner on the same date. The stock book and the minutes of stockholders' meetings reflect that the stock remained in the name of John Craig until it was transferred formally at some undetermined future date. The Board of Directors' meeting which authorized the purchase and sale of these 650 shares of stock was held on August 2, 1951. The board which authorized this transaction was made up of Anthony T. Zappia, Charles L. Zappia, and Marshall W. Thompson. Other actions taken by this Zappia controlled board included the following: (1) Agreement by S & Z to pay Avon Engineering Company, wholly owned by petitioner, monthly rental in the amount of $3,500 for equipment which Avon was to acquire at a future date. (2) S & Z acquired an option to purchase all the outstanding stock of Avon for $85,000. Payments were made on *119 this option to the extent of $19,000. On May 31, 1951, Avon had no assets or liabilities, and on May 31, 1952, it had earned surplus of only $14,922.22 and common stock outstanding of $1,500. Thus, it appears that the rental agreement and the option agreement were merely part of a scheme through which the petitioner diverted funds of S & Z to himself and to his wholly owned corporation. From August 2, 1951, the petitioner continued as president of S & Z. Subsequent actions taken by the corporation indicate that the 650 shares of stock were being voted for petitioner's benefit, and that he operated S & Z as he pleased. An example of these actions is found in the continued payments by S & Z on the option to purchase Avon stock after the stock had been transferred to Zappaigiel Realty Corporation. The evidence shows that in the year 1953 S & Z made four monthly payments on this option, although the stock of Avon had been transferred to Zappaigiel in February 1953. An additional indication of petitioner's manipulations may be found in the sale of S & Z equipment on February 25, 1953, to Indianapolis Machinery & Supply Company, Inc. This equipment was then leased from Indianpolis Machinery *120 & Supply Company by Zappaigiel, then leased back to S & Z. Also in February 1953 the machinery and equipment which had been held by Avon and which had been the subject of the rental between Avon and S & Z were sold to Indianapolis Machinery & Supply Company, leased to Zappaigiel Realty Corporation, and then leased to S & Z. At this same time Zappaigiel acquired an option from Indianapolis Machinery & Supply Company for the consideration of $10 entitling it to purchase this machinery and equipment at the expiration of the lease agreement for $12,000. Zappaigiel had 900 shares of capital stock outstanding, 700 of which were owned by petitioner. We have difficulty understanding the petitioner's argument that the 325 shares of stock of S & Z were acquired by Anthony T. Zappia as a result of a gift made on or about December 11, 1953. They concede that Zappia was a party to a scheme whereby the 325 shares of S & Z would revert to him. They seem to argue that McDaniel did not live up to his end of this fraudulent scheme and that they did not actually receive the 325 shares until December 1953. But we find no competent evidence to support this conclusion. The 650 shares of stock were originally *121 transferred to J. A. McDaniel & Company, Inc., and the 325 shares were transferred on April 1, 1952, to John B. Craig to hold for the petitioner. The evidence establishes that on the same date the certificate was endorsed to petitioner, and it would logically follow that possession of this certificate was turned over to him. In the stock book and in the minutes book, John B. Craig still appeared as the record owner. Since the transaction constituted a fraud on the remaining stockholders, it was necessary for the petitioner to continue to conceal his ownership of these 325 shares of stock until such time as he could, without fear of criticism, openly appear as their owner. When the stock was formally transferred to him the stock certificate stub was backdated to April 1, 1952. Petitioners argue that this transfer did not take place until December 1953, and attempt to relate that transaction to the time when McDaniel surrendered a portion of his holdings in S & Z. We think this is unsupported by the record. Therefore, we hold for the respondent on this issue. We are likewise convinced that the petitioners received taxable income of $4,000 in 1951, $11,000 in 1952, and $4,000 in 1953 *122 from S & Z which were designated as payments on an option to purchase all the common stock of Avon Engineering Company. The record discloses that they received these payments and they were not reported in petitioners' joint income tax returns for such years. Petitioners admit the receipt of these amounts but argue that they did not receive unrestricted payments. We cannot agree with this position. These payments were made to Anthony T. Zappia who testified that he deposited some of them in a joint bank account and that the funds were disbursed for his benefit and for that of John B. Craig. At the time Zappia received the payments they were not restricted and he did receive income. The subsequent disposition of the funds does not alter the situation. Substantially all disbursements from this account were for personal items, a large number of which can be attributed directly to Zappia. Only $3,000 of the total funds disbursed can be attributed to John B. Craig. This amount was disbursed in payment of a lot purchased in Craig's name. Zappia testified that Craig still owes him $3,000 for the lot and that he has instituted a suit to recover this amount. The evidence clearly shows that *123 the disbursements from this account were personal; that most of them were for the benefit of Zappia; and that the only disbursement identified as having been made for the benefit of John B. Craig is the subject of a legal action instituted by Zappia. An analysis of all the evidence leads us to the conclusion that these funds belonged to Zappia and that they were placed in this special account for disbursement in payment primarily for the construction of his personal residence. Furthermore, the option agreement under which these payments were made was authorized by the Board of Directors of S & Z on August 2, 1951, which at that time consisted of Anthony T. Zappia, Charles L. Zappia, and Marshall W. Thompson. The Avon Engineering Company capital stock which was the subject of the option could not have had a basis in excess of $1,500 as indicated on its May 31, 1952, balance sheet. Thus, it seems inconceivable that S & Z would agree in an armslength transaction to purchase an asset having a basis of only $1,500 for the exorbitant amount of $85,000 and then proceed to pay $1,000 a month under this agreement for a period of 19 months. In our judgment, what this all adds up to is just *124 another device to divert S & Z funds to the petitioner, Anthony T. Zappia. Accordingly, we sustain the respondent on this issue. Decision will be entered for the respondent. Footnotes
1. The petition filed herein alleges errors in respondent's determination with respect to 14 other adjustments contained in the notice of deficiency dated June 20, 1960, and identified as items (d) through (k), (m), (n), and (p) through (s). As to these issues, the petitioners assert that the deficiencies determined were arbitrary and should be expunged. We disagree. They have offered no evidence. We must therefore conclude on the record that they have failed to prove error in respondent's determination in regard to any and all of these issues. Under the circumstances we are unable to find that the deficiencies were made arbitrarily. See Welch v. Helvering, 290 U.S. 111↩ (1933).